First case case number 11 is 2 6 8 7 people versus a pizza Alvarez with the lawyers. Please approach the bench and introduce yourself. Good morning, Your Honor. My name is Ben Woloski. I represent Mr. Alvarez on behalf of the office. And Assistant State's Attorney Brian how these not represent people to you? No, I'm not. You're going to reserve some time for rebuttal. Let's proceed. May it please the court, I'd like to focus this morning on the actual innocence argument. Before you get there, the defendant seeks a remand for a third stage evidentiary hearing on two grounds. Okay, one of them that he made a substantial showing of actual innocence. And the second that his post-conviction attorney failed to fulfill the duties required under the Supreme Court Rule 651. Either ground by itself is enough to require a remand, is that correct? A remand, yes. The actual innocence would be for an evidentiary hearing and the 651C compliance is for new second stage proceedings. Okay, now even if assuming for argument's sake we were not persuaded on the record of the defendant's actual innocence, we would still need to correct her? Correct. Okay. In other words, we have no way of knowing whether the trial court would have dismissed the defendant's petition without an evidentiary hearing if the defendant's counsel had adequately performed her duties under 651C. Well, the circuit court below didn't really consider the merits of the actual innocence claim. The issue below was really timeliness and the court found that a sufficient grounds upon which to dismiss the petition. Okay, now you're going to start with actual innocence. But turning to the actual innocence claim, if the defendant testified at a new trial, that would mean there would be one victim identifying the defendant, one victim exonerating him. How could that not be material? Well, the fact that we have a witness who would come in, an eyewitness, and testify that Mr. Alvarez was not one of the two shooters would be material to the defense. It directly contradicts the state's own eyewitness, Mr. Camacho, who testified that yes, Alvarez was one of the two shooters. So if we consider whether this would conclusively change the result of a new trial, consider first that Alvarez's own brothers, his co-defendants, were acquitted at trial. Yeah, where are they? Have they ever come forward with affidavits? Oh, there were affidavits submitted with the original petition, but they don't necessarily support the same. Does the testimony of Barajas, if I'm pronouncing it correctly, that the defendant wasn't one of the shooters, that doesn't really take away from him being accountable, does it? Well, there's a couple things about the accountability. First, it wasn't addressed anywhere at trial. The state never argued that Alvarez was an accomplice, that he was accountable for this. They argued that he was an actual shooter. Second, even if we put Mr. Alvarez in the car at the time, that doesn't necessarily prove accountability. Mere presence alone at the scene of the crime isn't enough to prove accountability. But again, his brothers were acquitted at trial. The court didn't think that there was enough circumstantial evidence to find them accountable. No, because actually the evidence was different for each one, and this was the single eyewitness who identified Alvarez. And Guzman identified all three, didn't he? Guzman said that all three of them resembled the shooter. Yes. He wasn't sure which one it was, but he didn't identify Aguilera as the shooter. And Camacho also gave a description, a physical description, including a short or a black leather jacket. There was some evidence about the leather jacket, and at one crime scene it was described as a long jacket, and wearing a leather jacket. He didn't say it was long. I thought there was a description as to... Yes, as to one of the, from Guzman, I believe. I don't know. But anyway, then there was this situation involving the car. There was a description immediately radioed out. Gray Buick, license plates, you know, three letters and then three numbers, which the numbers were off, but the letters were on. And at that time, the police stopped the vehicle. And as I recall, Agapito was the only one that fled. He fled after there was some issue about, he asked the officer who stopped them, about a previous shooting from another night in which a friend was killed. Right, and that involves Barajas, doesn't it, that shooting? I'm not sure if it does or not, Your Honor. I'd have to go back and double check. Well, I think if you read the case involving Barajas and the victim, you'll find out that the shooting involved, the shooting the night before that Barajas was eventually convicted for. Okay. I mean, there is a reported decision. Sure, there is, yes. And correct me if I'm wrong, Barajas was subpoenaed to appear and testify at this trial, was he not? Doesn't the record disclose that the state made every effort to bring him in to testify at this murder trial, and he refused to appear? Well, there were a number of issues with trying to find Barajas. There were some questions to whether he was in prison, whether he was in jail, whether he was going back and forth between those facilities, whether he was released. I don't know the extent to which... How can you not know that? It seems to me that it's not clear from the appellate record as to where he was. And it seems to me that he was either in jail or he wasn't in jail. And that's a fact that can be determined. My question is, why wasn't that fact determined? At the post-conviction? At any time. I have no idea, Your Honor. I honestly can't speak to that. But aren't you the one who's saying that he's a newly discovered witness? I mean, my question is, where was he? I mean, if he was in jail, he's certainly findable. Yes. So I think that if he was in jail at the time of the trial, then he's findable. And he certainly, all you have to do is ask the judge, bring him over. Let's see what he has to say. But is there any indication that that was ever done? That was ever checked? I mean, you have to show some diligence before you can come before us and say, you know, 10 years, 15 years down the road, we were diligent. This is a newly discovered witness. What was done by the defense to try to get a statement from Mr. Barajas at the time of trial? Well, what the defense said was try and go find him. And when they tried, he was gone from whichever institution that they went to. Is there some record of that? I mean, how do we know that? That's coming from host trial counsel, his indication after the trial. Well, when was he gone? I don't know. I don't have the specifics on where he was. Isn't that a fact that's easily ascertainable? No, it's not. You can't just go to the jail and say, what day was he released? How long was the case pending? You know, it was pending for some time, I imagine. Yes, several years. So during those several years, are you saying at some point Mr. Barajas was in the jail? Was it a juvenile facility? Is that right? I don't know if he was in a juvenile facility. So you don't know. So my question is what, for those two years or so that this case was pending, since his name was in the police reports, what did the defense do to try to ascertain what his testimony was going to be? What diligence was there done? Did they ever send an investigator to the jail to say, will you talk to us? That was the indication from host trial counsel. He indicated that someone physically went to whichever institution he was being held in and he was gone by the time they got there. At what point? At what point? So what you're saying is he was gone. That means at some point he was there. So my question is at what point during the pendency of this case did they ever try to go talk to the guy? I don't know. I can't give you specifics in terms of when they went there. I just can't. Doesn't that somehow reflect on the question of whether this is a newly discovered witness? I don't think it does. There wasn't any diligence exercised to try to get his statement? I mean, Mr. Alvarez knows. He's a complainant, right? We know that he was present at the scene. Did anybody ever try to talk to him? Someone did. And I think one other thing to consider here, Justice Palmer, is that host trial counsel indicated that Barajas' own attorney said he would not let his client testify. Barajas, as Justice McGrubb pointed out, he had his own pending murder charges in an unrelated case. But that, according to that Jones case, does not make him unavailable. Not at all. Because that case has, maybe it was the reason for this shooting, but that doesn't make him unavailable. But Molstad does say that no amount of diligence can force someone to testify against their Fifth Amendment rights. Right. But Jones says just saying you don't want to testify that you're a gang member has nothing to do with whether you're unavailable. There's been no affidavit, there's been no swearing of any kind by Mr. Barajas that he couldn't testify because it would be against his Fifth Amendment interests. That's not in the affidavit. Because that's not actually something we can consider. He's never testified, he's never sworn that the reason he didn't appear was because he didn't want to, he wanted to exercise Fifth Amendment rights. He simply said that if I were called to testify, I would say that he's not one of the shooters. No, what was known prior to trial was that it was believed that Barajas would say, I can't identify him as one of the shooters. Now, what's in his affidavit is different. It's subtle, but it makes a big difference. What's in his affidavit is saying, I saw the shooters, Alvarez was not one of them, which is different But under actual innocence, that does not show total vindication. It only takes him out as a principal, but not fully accountable. Again, as to the accountability, Your Honor, I would argue that there isn't much other evidence of accountability. Again, his brothers were acquitted and either of them could have, you know, if under the States Theory of Accountability, either of them would have been found accountable. But again, both were acquitted at trial. Circumstantial evidence was such that the court did not believe there was enough evidence to prove, Your Honor, reasonable doubt that either of them was responsible. It came down to Camacho's solitary identification of Agapita as one of the shooters. Well, Guzman, they actually said that all three of the brothers looked alike and that he identified all of them as possibly being involved. But that wasn't enough for the circuit court. The circuit court didn't think that was going to... No, it didn't think it was enough for the other two. But then again, we have different evidence for this defendant. He's the one that bled. He was arrested in the car. The license plates were almost the identical license plate. You've got a gray Buick being confiscated almost immediately. And you have a black leather jacket, which Camacho said the shooter was wearing. But most of that evidence that you're describing, Justice O'Brien, is the same evidence that would have come in against his brothers. No, the brothers didn't flee. The brothers didn't say anything. They didn't say the same things that he said. And they weren't identified by Camacho. They weren't. No, but they were all arrested at the same time, at the same car. Right. Within 15 minutes of the offense. Yes. All right. But then we have Barajas who's coming in now and saying, I saw who it was and it wasn't Agapita. Let's talk about Barajas. He's a convicted felon, actually convicted murderer. His testimony is changing some 20 years later, right? It wasn't. He never testified. He never testified. It was what was known, what was believed. In the police reports. Yes. So isn't he your typical recantation type of person? I don't know that he's recanting. It's that he's coming forward now with this evidence that is affirmatively exonerated. Well, again, I understand your argument. I don't know that saying he wasn't one of the shooters is what, you But I do think we have a, I think the questions here are twofold. Is this newly discovered and is it likely to change the outcome? And I understand the argument that it could possibly change the outcome according to your summarization of the evidence, but I don't know that you can meet newly discovered because he's in the police reports, he's named, he's only, his unavailability is not something that the lawyer can step in and create. So I think the critical thing here is, is this truly newly discovered? I would ask you to consider this too, Justice McBride. Barajas' own case concluded, his direct appeal concluded in somewhere around October 2001. He comes forward now  case is over, he's now, he no longer has any Fifth Amendment concerns, and that's where he's finally coming forward and saying, here is what I would actually say. And I know we can't satisfy Justice Palmer in terms of, of giving you an explanation of where he was, on which date, and who tried to find him. But the fact of the matter is, no one Well, the state says, the state says that, that an assistant state's attorney said that he was absolutely in custody at the time of this trial. That's what, that's what the state said. I'll ask them when they step up about this, but it says in the briefs that an assistant state's attorney said he's in custody at the time of this trial. So if he's in custody at the time of the trial, he's findable. It's very easy to say, judge, bring him over. He's findable, but again, he's not going to necessarily want to waive whatever Fifth Amendment. But he says in his own affidavit that he would have testified if he was asked. So I mean, it seems to me like you're It says in here, Barahas indicated he would have been willing to testify at Alvarez trial had he been called. But that's not taking into consideration the fact that he's got his attorney who would, even if Barahas wanted to testify, if his attorney's not going to let him for fear of incriminating himself on this pending murder charge. Isn't that so speculative? I mean, you know, isn't it his decision? I mean, are we supposed to take a piece of his affidavit, a disregarded piece of his affidavit says, if I would have been called, I would have testified. And this is what I would have said. Sure. And we're not taking anything away from that. We're just qualifying it by saying if his attorney would have let him. I think also this boils down to is we've got a situation, we've got a lot of unknown questions. We don't know where Barahas was at the time of trial. We don't know how it would have been, how the conflict between what his attorney was saying and what Barahas was saying would have been resolved. I think these are questions that can resolve at an evidentiary hearing. Don't you think in order to get that evidentiary hearing you need to show by way of affidavit that you're entitled to that hearing, that you exercised diligence and that you were precluded from, where's an affidavit from his attorney? Where's his attorney's, I mean, you've got Peters saying, well, this is what this other lawyer told me. Sure. So where's an affidavit from that lawyer? I would not have let him And by the way, this was after the trial, isn't it? When did he pick up this murder? Barahas? Yeah. It was, I believe it came up during the pendency of Alvarez's own case. Yeah. Could I interject here? Could you explain what it is about the Fifth Amendment that you're claiming he would be, how he would be compelled to testify against himself in this case? This case involved some sort of gang altercation. Barahas and Camacho were Latin kings. Camacho testified that what tipped this off was other gang members coming toward them, and that's where Barahas yelled flakes, flakes indicating that there were some other gang members. Yes. So Barahas's attorney's concern regarding the Fifth Amendment issue was if Barahas were to come forward and testify at all in this trial, he would be implicating himself in concern for Barahas's own pending trial. Okay, but isn't that what, isn't that what Jones says is that that is not making him unavailable? I could be incorrect, but I think it says that. But then we, again, we look at something like Mossad, which has no amount of diligence, is going to be able to have a defendant get someone testify against their Fifth Amendment wishes unless they're willing to do so. And again, once Barahas's direct appeal concluded, he's apparently willing to waive any last chance at a Fifth Amendment issue, and that's when his affidavit eventually comes forward. I'd like to just briefly address the timeliness aspect. It was obviously not filed within the 10 applicable statute of limitations, but I would argue that there are four reasons why this Court should find that the timeliness issue does not preclude the review of the merits. Well, on an actual innocent claim based on newly discovered evidence, there's never been a time bar case, has there? At the time it was filed, which typically governs the statute of limitations at the time of filing governs the proceedings. Actual innocence wasn't exempt from the statute of limitations. It is now, and that's why if Alvarez had waited an additional 19 months to file this, if he was another year and a half later, it would have been an anomaly of he filed it too late to be timely, but not late enough to be timely. I think, you know, simply as a matter of fairness, as a matter of due process, it ought to just be considered timely enough to consider this on the merits. Our Supreme Court in cases like Washington and Ortiz have indicated that procedural hurdles shouldn't bar the consideration of an actual innocence. Yes, it really wasn't it probably Justice Freeman's special concurrence in Eau Claire that suggested that the legislature address this problem where you would have perhaps a claim of actual innocence that could be not heard because of the statute of limitations that most felt was there, and then at some point the legislature saw fit to specifically remove any statute of limitations from actual innocence claims. Yes, so we've got the Supreme Court saying we don't want procedural limitations. We've got the legislature saying we don't want procedural limitations. We've got the U.S. Supreme Court in McQuiggan's case saying we're not even going to hold statute of limitations applicable for habeas cases, and simply for these reasons, because cases like Washington hold that it would unquestionably violate the fundamental concept of substantive due process to not let someone go forward with an actual innocence case. We would just simply ask this court to overlook, excuse the timeliness issue, and focus on the merits, and because we contend that Mr. Alvarez's petition has made a substantial showing of actual innocence, we would ask this court to remand his case for a third stage evidentiary hearing. Thank you. Good morning. May it please the court, Assistant State Secretary Bryan, how do you do this on behalf of the people of the state of Illinois? The defendant did not make a substantial showing of actual innocence based on newly discovered evidence. It would warrant an evidentiary hearing. Newly discovered evidence, as your honors have explained, is evidence that was unavailable and could not have been discovered sooner through due diligence. And the defendant had to make a substantial showing of this for the second stage. The defendant didn't make such a showing. The evidence, in other words, Burejas, was not newly discovered. He was known to just about everyone from day one. He was interviewed at the scene, his interview was turned over, he was in the charging documents, filed in the preliminary investigation filed on September 27th, 1993. Did the state attempt to secure his presence for the trial, the original trial, as far as you know? Based on the record, I don't know, actually. We don't have the pretrial record in this case, which makes a lot of the stuff with respect to the efforts that were made with Burejas kind of subject to conjecture. Well, the trial record is part of the record. Right, but we don't have any, a lot of things that Mr. Peters, post-trial counsel that is, was disagreeing or at least not completely in agreement with the state's attorney for the post-trial proceeding. What did Mr. Peters ask for at the motion for a new trial vis-a-vis Mr. Burejas? Peters suggested, well, first of all, he wanted more time, although it's not clear exactly what for. He stood on the motion filed by prior counsel, so he wasn't alleging any sort of ineffective assistance, and he wanted to kind of bring up that he poked around and he had spoken to people who had spoken to Burejas, and what Peters thought based on what he heard was that Burejas might somehow be able to support a second degree murder conviction because of the, essentially because of the gang wars that were going on. That's how I read the record from that one day, and I'm really kind of trying to squeeze a lot of meaning out of one proceeding, and I think, unfortunately. How about the rule 651C violation? I don't think there was a rule 651C violation. Counsel complied with everything in there. I don't know what counsel should have done besides. The rule says to do those things, and he did them, and under Perkins, the Illinois Supreme Court case, the undefeated, in this case, presumption is that counsel complied. Well, this third assistant public offender filed the 651 certificate and said it did not have to be amended. Isn't this the person who was arrested for choking the prosecutor? I believe he was, and he was subsequently acquitted, as far as I know, but I don't know what that actually has to do with this. Well, usually people who choke people are not dealing with a full deck, are they? Is the claim that you're, is the claim that's before us on this petition? In other words, did the lawyer somehow miss the Barajas? No, he argued the Barajas. Isn't the whole thing Barajas? It is now. I'm sorry, as far as the substantive issue, the merits of the petition involve Barajas, right? There were other things in the petition that were found by the White House. But the substance of this is that Barajas is a newly discovered witness, his testimony would be material, it would probably change the outcome, and it's not cumulative. Did the lawyer miss that? No, he didn't. Because that's right before us. Yes, no, the lawyer didn't miss that, and by the way, neither did the trial court. And this is a petition that was in the trial court from 2002 to 2011. Isn't that true? I mean, this is 2014. Yes, it took a while to get through, but he supplemented it. There wasn't a lack of care here. There was nine years' worth of work in the trial court. No, and also I agree, Your Honor, and also I want to point out that specifically with respect to the Barajas claim, counsel amended the petition to essentially, amended, not the petition, he amended, he got an amended affidavit or another affidavit from Barajas that essentially dotted some of the critical I's and crossed some of the critical T's. But the fourth assistant public defender who never filed an appearance stated that the defender was claiming self-defense. There was no self-defense in this case. There wasn't the first trial. I mean, at the trial, wasn't there? That was what, that was one of the, they advanced a lot of alternative claims. I mean, there was no evidence of self-defense. Wasn't that an issue on direct appeal? That was what Mr. Peters was trying to raise, or suggest, at least. The defendant also asserts that the verifiable evidence supports his claim of self-defense. That's from the 98-0870 direct appeal that the defendant filed. But that had nothing to do with the petition. The fact of the matter is, is that the defense of self-defense was raised at trial and the defendant and the state appellate defender in its wisdom proceeded with that in the direct appeal. And there's no suggestion that his lawyer was ineffective in any way for that. That was, that, actually, he had two lawyers. He had a private counsel named Mr. Ingalls, I believe, at trial, and then Mr. Peters represented him at post-trial and really tried and, and on appeal, and Mr. Peters fastened on the self-defense argument. That was what Mr. Peters wanted to use Burejas, Burejas for. Because it would also be in line with the original. Yeah, but it wasn't part of the PC, was it? I believe it was certainly part of the initial PC, which was, it isn't the part that we're, we're hearing about today. The PC that's before us. The PC that's before us? Certainly. It's just not what they're arguing in their, they've narrowed the issues from the PC, which asserted all kinds of things. So it is part of the PC. It's just, you know, it's not. What about this material or new and unavailable because of his desire? Well, I don't know. I mean, what is this thing about, if someone says, I want to exercise my Fifth Amendment rights, but don't they have to have some Fifth Amendment rights to exercise? Clearly they do. They also, I think you need to take it to the next step. You can't just have, what essentially happened was Peters was the post-trial counsel. He stood up and said, I spoke to someone who said that we can't get Burejas to testify because Burejas would exercise his Fifth Amendment rights because Burejas, as a defendant, in another case it would show his gang affiliation. I don't believe that that's a viable Fifth Amendment claim, but even if it is, I think they probably needed to go a little further than that than just asserting it through somebody else talking about somebody else. Burejas, no one from Burejas ever got up there. No one representing Burejas even said that. What we have is second or third hand statements made by Peters at the post-trial hearing to that effect. Doesn't there have to be an affidavit supporting a conclusion with specific fact that somehow he'd be exercising or he would have to be compelled to be testifying against himself in order to excuse? I think you need to take it to the next step. And so yes, I would say that. And the other thing I would point out is that it kind of flies in the face of the ultimate affidavit that we're arguing about, which just kind of pretends that none of that happened. It just says, oh, you know, if they found me at trial, I was ready, willing, and able to come testify. That would be maybe... And that's his decision, right? Yes, it was his decision. And you can't stop him, right? And we have no evidence that he ever talked about with anyone. What we have is Peters' representation that he apparently spoke to a lawyer who may have represented Brayhouse at the time. Brayhouse's affidavit... Do we even know who this lawyer is? I'm sorry, Mark. Is there any authority that allows a lawyer to exercise a Fifth Amendment right for an individual? I don't believe so. I think unless they've got, you know, some very strong power of attorney... Well, I don't... I don't. No, I don't have anyone in mind. A Fifth Amendment right has to be exercising that individual right. A lawyer can't decide whether someone testifies or not testify at their own trial. I don't know anyone in any way ever exercise a right belonging to someone else. But in any event, there's no affidavit anywhere in this record where Brayhouse says that I didn't testify before because I wanted to exercise my Fifth Amendment right. What he does say is if you had called me, I would have testified. I was available, ready, willing, and able to give this testimony, which suggests he was actually ready, willing, and able, and not newly discovered. But there's not... It would be a different story if you said in the affidavit, I would have said this, but at the time I was in trouble, and so I would have had to take the Fifth. But that's not the case anymore. This is exactly the opposite situation, where he says I would have come forward. Let me ask you this. What about this question of where Brayhouse was at the time of the trial? There's an assistant state's attorney that, I guess, during the discussion with Mr. Peters in front of Judge Kazmersky, where the assistant state's attorney says he was in custody. And they say, well, before the trial, somebody went out to talk to him and couldn't find him because he had been released. Didn't he have a murder case pending? How could he be released? Mike, doesn't the state... Does the state know where he was? I'm going to just go with what the prosecutor said at the time, which was that the defense said that the prosecutor... Let's go with that guy. Yeah, well, he was there then and there. I was in law school or not quite. He said that he was 99% sure that the defense knew where Brayhouse was. And Peters... Well, it makes sense, though, doesn't it? I mean, we're being told that during the penancy of this case, Mr. Brayhouse picks up the murder case, right? Okay. And subsequent to this trial, that case is resolved somehow, right? Or was it... He was convicted, yes. All right. So what, he was released? No. He was in custody. He was in custody. So all you have to do is say, judge, could you writ this guy over? I want to interview him. And then when he's writ over, his... We know the law also provides for it. There's nothing wrong with a lawyer talking to somebody else's client as long as you don't talk to him about that case that the other guy has a lawyer for, right? So, but if it comes to the point in time where he's going to be called as a witness for us to testify... And by the way, he was complaining in this case anyway. If he's called to testify as a witness, his lawyer can step up and say, you know, I'm representing him. I'm advising him not to testify because there's something that he might say that might implicate him. And then he can make a choice. I plead the fifth or I don't plead the fifth. Or he could, according to this affidavit, he was going to testify. And then there's the whole question is, you know, you said, well, you got to take it to another step. What if an imaginative state's attorney says, you know what, judge? We're going to put him on the stand and we're going to give him use immunity. So if he says something about gang involvement, we won't use it in his trial. Can he do that? Yes. I don't... If the court has no further questions, I think we spelled everything out as clearly as we can in our briefs. We would ask that for the reasons stated today, as well as those more thoroughly elaborated in our briefs, that this court affirm the trial court's second stage dismissal of defendant's petition for post-conviction relief. Thank you. A brief rebuttal, because your time is... Just about the self-defense aspect. Peter's post-trial thought that Barajas would say that there may have been some sort of self-defense component, that Camacho and his friends were throwing something at whoever was approaching him. So that's where that came from. And that just goes to show that what Peter's new post-trial wasn't what Barajas is now saying in his affidavit, which is, I can conclusively say that Alvarez wasn't one of the shooters. It was still, even after trial, they all thought that Barajas would simply say he couldn't identify him. So that just goes to show that this is... That aspect of his testimony, where he goes to say, Alvarez was not one of the shooters, that aspect is newly discovered. It was not known and it couldn't have been known because it never came out at any other time in his interviews or in his statements to the police or when anyone went and talked to him, whoever did, it was simply that he couldn't identify him. And now he's saying, I know. What was exactly his statement to the police concerning whether he could or could not identify Mr. Alvarez? His statement, like the actual report, isn't in the record. We just have counsel's indication that he indicated that he could not affirmatively identify anyone. He couldn't say whether it was Alvarez or not. And so it contrasts that with what's in the affidavit, which is, I know it was not Alvarez. So that distinction between those two aspects, that's what makes it newly discovered here. I'm sorry, did, Rookie, you could remind me, did he view a lineup? I don't know that Barajas did. I don't think that's in the record. The fact that he didn't testify means we don't have a whole lot of knowledge about what he would have said prior trial. So we're relying just on what counsel indicated. Are you saying that because the police report said initially he told the police that he couldn't identify anyone, that when he filed his affidavit later, saying that the defendant was not one of the shooters, that that makes it newly discovered? Well, I'm saying that that aspect of it is what's newly discovered. But why? When a witness changes a statement, I don't know anything that suggests that makes it newly discovered. Is there some case that says that? Well, it's not so much that he's changing his statement, it's that we now know what he actually would have said contrasts with what was apparently in the police reports. Right, but under the cases, what case says that when a witness's testimony is different, that that makes it newly discovered? I don't know that that's the test. I'm just asking, what case would you cite for that? I don't necessarily have a case exactly at that point. I would just suggest that the fact that he is now coming forward and saying, I know it was not Alvarez. I thought newly discovered generally meant that the person wasn't out there, wasn't available. It was something new, like he came from somewhere else, like they never, the police never talked to him, he was never listed in the police reports. He was new, someone that no one knew about. Typically, yes. I don't know that there's any case authority that says, you know, if a version of the event goes from one thing to something else, that that makes it newly discovered. I'm not sure about that one. Isn't newly discovered, isn't that evidence that would show that the defendant is not guilty of the crime? Yes. And that's what we're processing? Isn't that what we're trying to do, just punish innocent men, not just because their name is defendant, they're automatically guilty? Well, what we're trying to do here is to show that we've got someone who's saying he wasn't one of the shooters and that's what the state's evidence at trial was. And for that reason, we would ask this court for amendments for the evidentiary hearing. But new material, non-cumulative and likely to change the case, doesn't really have specific meaning within the law. And really it's the law that we must look to, not our personal feelings or whether we don't like the result. We have to study the cases and the cases tell us what newly discovered is. It's not something that we sit up here and decide today that something is new. We have to study the law. We have to look at the cases. We have to see what the cases say. Newly discovered means precedent, not something that we decide is new. And actually, new does have a distinct meaning in dictionaries, but it also has a very distinct meaning in case precedent. Our obligation is to interpret what those cases say. We cannot make up what we want something to be new. So, I mean, I'm happy to see if there's cases that suggest that when something changes, that it becomes newly discovered. But you just said yourself that you're not aware of a case that actually says that. But you do agree that the cases say what newly discovered. Of course. And that's where we should really be focusing our attention today. Well, the case was very well argued by both of you. Thank you, Your Honor. We'll take this case under advisory. We're going to have a brief recess while we change panels.